**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LYNN FISH, et al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:24-cv-00100-MAL |
| | ) | |
| WALSWORTH PUBLISHING COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM AND ORDER</u>

The Court has reviewed and considered Defendant Walsworth Publishing Company's Motion to Dismiss Plaintiff Lynn Fish's complaint.  (Doc. 28).  The Motion to Dismiss is **GRANTED** in part and **DENIED** in part.  The Motion to Dismiss, Doc. 28, is **GRANTED** with respect to Count I (Negligence), Count III (Breach of Bailment), Count IV (Invasion of Privacy), Count V (Unjust Enrichment), Count VI (Violation of California's Unfair Competition Law), and Count VIII (Violation of the California Consumer Records Act).[1]  The Motion to Dismiss, Doc. 28, is **DENIED** as to Count II (Breach of Contract) and Count VII (Violation of the California Consumer Privacy Act)**.**

### FACTS AND BACKGROUND[2]

The defendant, Walsworth Publishing Company Inc, ran a website offering online sales. (Doc. 19 at ¶ 131).   To make an online purchase, customers had to provide their name, payment card number, expiration date, and security code (their personally identifiable information, or "PII").  (Doc. 19 at ¶¶ 1, 151).  Plaintiffs Lynn Fish, Charmaine Pearce and Alarie Bowerman provided this information to Walsworth to make an online sale.  *Id.* at ¶¶ 75, 89, 105.  They allege that they provided this information with the understanding that the information would be kept secure.  *Id.* at ¶ 22.  Despite this, Walsworth did not take adequate measures to secure the data.  *Id* at ¶¶ 50, 53–57.

---

[1] Count VI, Violation of California's Unfair Competition law is erroneously listed as Count V in the Complaint despite being the sixth count.  (Doc. 19 at 37).  The subsequent counts are also mislabeled.  *Id.* at 39-41.  The Court will refer to them by their order rather than their label.

[2] All facts pleaded in the complaint are assumed true when determining whether to dismiss counts under Rule 12(b)(6).  *Ritchie v. St. Louis Jewish Light*, 630 F.3d 713, 715-16 (8th Cir. 2011).

Unfortunately, on February 9, 2024, Walsworth discovered that its systems had potentially suffered a data breach compromising the Plaintiff's PII. *Id*. at ¶ 2. This data breach allowed criminals to steal PII being stored on Walsworth's systems. *Id*. at ¶ 43. It is not clear when the data breach actually happened. *Id*. at ¶ 4. Nine months and a half months after Walsworth discovered the breach, it notified the people who were potentially affected by the breach. *Id*. at ¶ 7. People affected by the data breach are at risk of identity theft because their PII is currently in the hands of cybercriminals. *Id*. at ¶¶ 58–59. To mitigate this risk, they must spend time monitoring their accounts, contacting credit bureaus, re-securing their own computer networks, and changing passwords, among other things. *Id*. at ¶ 69. In addition to the damages suffered by the other plaintiffs, Charmaine Pearce's PII was "used to open bank accounts, apply for credit cards, and enroll in subscription services, all without her knowledge and permission." *Id*. at ¶ 98.

### PROCEDURAL HISTORY

Lynn Fish filed suit against Walsworth. (Doc. 1). The case was subsequently consolidated with cases filed by Charmaine Pearce and Alarie Bowerman. (Doc. 16). Fish, Pearce and Bowerman subsequently filed a single consolidated complaint. (Doc. 19). The Complaint is a putative class action seeking to represent a nationwide class of "All individuals [whose] PII was compromised in the Data Breach and to whom Defendant sent an individual notification that they were affected by the Data Breach." *Id.* ¶ 118. It also seeks to certify a separate subclass of California residents. *Id*. The complaint alleges:

Count I: Negligence and Negligence *per se*. *Id*. at 27.

Count II: Breach of Implied Contract. *Id*. at 31.

Count III: Breach of Bailment. *Id*. at 33.

Count IV: Invasion of Privacy. *Id*. at 34.

Count V: Unjust Enrichment. *Id*. at 35.

Count VI (labeled as second Count V): Violation of California's Unfair Competition Law (asserted by Pearce and the putative California class). *Id*. at 37.

Count VII (labeled as Count VI): Violation of the California Consumer Privacy Act (asserted by Pearce and the putative California class). *Id*. at 39.

Count VIII (labeled as Count VII): Violation of the California Consumer Records Act (asserted by Pearce and the putative California class). *Id*. at 41.

2

## LEGAL STANDARD

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). To survive a motion to dismiss under 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This standard requires a plaintiff to show at the pleading stage that success on the merits is more than a "sheer possibility." *Id*. It is not, however, a "probability requirement." *Id*. A plaintiff need not provide specific facts in support of his allegations, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007), but "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008) (citing *Twombly*, 550 U.S. at 555 & n.3). This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Id*. at 562 (citation omitted). At this stage, the Court accepts as true the factual allegations in the complaint. *Id*. at 556.

Determining if well-pled factual allegations state a "plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The well-pled facts must establish more than a "mere possibility of misconduct." *Id*.

## DISCUSSION

**I.     The Motion to dismiss is granted as to Count I.  The Complaint fails to state a claim for negligence or negligence *per se*.**

In Count I, Fish brings a negligence claim based on both negligence and negligence *per se*. (Doc. 19 at ¶¶ 130–49). Walsworth moves to dismiss both theories. (Doc. 29 at 8).

### A.  Negligence

"To establish a negligence claim under Missouri law, a plaintiff must prove: (1) the existence of a duty; (2) a breach of that duty; (3) causation; and (4) injury." *Aaron v. Nat'l R.R. Passenger Corp.*, 163 F.4th 503, 508 (8th Cir. 2025) (citing *Madden v. C & K Barbecue Carryout*,

3

758 S.W.2d 59, 61 (Mo. 1988)).  Walsworth argues that Fish has not stated a claim for negligence both because she does not allege that she was owed a duty of care and because she did not allege that she suffered a cognizable injury.  (Doc. 29 at 2–3).  Fish claims that Walsworth had a duty to take adequate cybersecurity measures because a breach was foreseeable.  Walsworth is correct—it had no duty of care, and Fish therefore cannot state a claim for negligence.

"A duty of care arises when 'there is a foreseeable likelihood that particular acts or omissions will cause harm or injury.'"  *Harner v. Mercy Hosp. Joplin*, 679 S.W.3d 480, 484 (Mo. 2023) (citing *L.A.C. ex rel. D.C. v. Ward Parkway Shopping Ctr. Co.,* 75 S.W.3d 247, 257 (Mo. 2002)).  "A duty to protect against the criminal acts of third parties is generally not recognized because such activities are rarely foreseeable."  *Wieland v. Owner-Operator Servs., Inc.*, 540 S.W.3d 845, 848 (Mo. 2018) (citation modified).  "There are limited exceptions to the general rule, however, when special facts and circumstances render injury foreseeable in a given case." *Harner,* 679 S.W.3d at 484.  There does not appear to be such an exception in the context of cyber-attacks. "…[N]o court applying Missouri law appears to have recognized a general, common law duty to safeguard information from a criminal cyberattack."  *Mackey v. Belden, Inc.*, No. 4:21-CV-00149-JAR, 2021 WL 3363174, at *6 (E.D. Mo. Aug. 3, 2021).  While the Court in *Mackey* found a duty, it relied on the existence of a special relationship—the employer/employee relationship.  *Id*.; *Colley v. Neighbors Credit Union*, No. 4:25-CV-00687-SRC, 2026 WL 864583, at *12–13 (E.D. Mo. Mar. 30, 2026) (distinguishing *Mackey* and finding no duty of care for cybersecurity).  Like in *Colley,* the relationship here is "between a business and former customers, or between a business and individuals with an opaque relationship to the business."  *Id.* at *13.  "Plaintiffs have not cited, nor has the Court found, a Missouri court that imposed a duty based on a special relationship between a business and former customers, or between a business and individuals with an opaque relationship to the business."  *Id*.  "[I]t is not the role of a federal court to expand state law in ways not foreshadowed by state precedent and our review of related [Missouri] law does not foreshadow such an expansion." *See Ashley Cnty., Ark. v. Pfizer, Inc*., 552 F.3d 659, 673 (8th Cir. 2009) (citation modified).  The Court declines to find an exception to the general rule and create a new duty of care.  *See Colley*, 2026 WL 864583, at *13.  Consequently, the Motion to Dismiss Count I, Negligence, is granted.

4

### B. Negligence *per se.*

Next, Walsworth argues that Fish's negligence *per se* claim should be dismissed for two reasons: (1) because Fish has not alleged a cognizable injury and (2) because negligence *per se* cannot be premised on violation of the Federal Trade Commission Act, 15 U.S.C. 45(a).  (Doc. 29 at 14–15); (Doc. 19 at ¶¶ 24, 199).  Walsworth is correct that negligence *per se* cannot be premised on the Federal Trade Commission Act.

Federal Courts sitting in diversity, as here, apply state law.  *Maxus Metro., LLC v. Travelers Prop. Cas. Co. of Am.*, 163 F.4th 441, 449 (8th Cir. 2025).  Federal courts should not expand state law "in ways not foreshadowed by state precedent." *Ashley Cnty.*, 552 F.3d at 673.  In the absence of state supreme court precedent on an issue, federal courts must predict, to the best of their ability, how the state supreme court would rule on an issue.  *Ringhofer v. Mayo Clinic, Ambulance,* 102 F.4th 894, 903 (8th Cir. 2024).  The parties agree that Missouri law applies to the common law claims.  *See* (Doc. 29 at 7); (Doc. 36 at 5).

The Missouri Supreme Court has held that "violations of statutes and administrative rules may constitute negligence *per se*." *Parr v. Breeden*, 489 S.W.3d 774, 781 (Mo. 2016).  "The rationale behind this principle is that the statute or rule is a legislative or administrative pronouncement of the standard of care; therefore, a violation of the statute or rule constitutes a breach of the duty of care." *Id*.  A negligence *per se* claim requires plaintiffs to plead "that defendants violated a specific statute or regulation and that the injury complained of was the kind the statute or regulation was designed to prevent." *Id*.

At least one Missouri court of appeals has held that only statutes creating a private cause of action may underlie a negligence *per se* claim. *Howland v. Truman Med. Ctr., Inc.,* 719 S.W.3d 98, 109 (Mo. App. 2025) ("Only those statutes which create a private right of action can form the basis for a negligence *per se* claim."); *see also Colley*, 2026 WL 864583, at *13.  But at least one other Missouri court expressly eschews this requirement. *J.J.'s Bar & Grill, Inc. v. Time Warner Cable Midwest, LLC*, 539 S.W.3d 849, 866 n.13, & 867–69 (Mo. App. 2017) ("[T]here is a difference between whether a statute creates a private right of action . . . and whether a statute establishes a standard of care supporting . . . negligence *per se*"); *see Negron v. Ascension Health,* No. 4:24-CV-00669-JAR, 2025 WL 2710014, at *10 (E.D. Mo. Sept. 23, 2025) ([Defendant] posits that a plaintiff must have a statutory claim in order to also have a negligence claim. This is incorrect.").  Numerous Missouri courts address negligence *per se* without addressing this alleged

5

requirement, including the Missouri Supreme Court. *See, e.g., Parr*, 489 S.W.3d at 781; *McKinney v. H.M.K.G. & C., Inc.*, 123 S.W.3d 274, 278 (Mo. App. 2003); *Goudeaux v. Bd. of Police Comm'rs of Kansas City*, 409 S.W.3d 508, 512 (Mo. App. 2013); *Martinez v. Kilroy Was Here LLC*, 551 S.W.3d 491, 496 (Mo. App. 2018); *Host v. BNSF Ry. Co.*, 460 S.W.3d 87, 97 (Mo. App. 2015). These courts—when they list out elements—require a showing of four elements: "1) a violation of a statute or ordinance; 2) the injured party must be within the class of persons intended to be protected by the statute or ordinance; 3) the injury complained of must be of the nature that the statute or ordinance was designed to prevent; and 4) the violation of the statute or ordinance must be the proximate cause of the injury." *J.J.'s Bar & Grill, Inc.*, 539 S.W.3d at 869 (quoting *Lowdermilk v. Vescovo Building and Realty Co., Inc.*, 91 S.W.3d 617, 628 (Mo. App. 2003)).

Here, the Court need not determine whether Missouri law permits negligence *per se* only when the statute allegedly violated creates a private cause of action because the negligence *per se* allegation based on an FTCA violation fails either way. If negligence *per se* requires the statute allegedly violated to provide a private right of action, then the FTCA cannot form the basis of a claim because "[t]he FTCA creates no private right of action." *In re SuperValu, Inc.,* 925 F.3d 955, 963 (8th Cir. 2019); *see also Colley*, 2026 WL 864583 WL 864583, at *13. The claim similarly fails absent the private-right-of-action rule because negligence *per se* requires the statute to define the standard of care, *see Goudeaux*, 409 S.W.3d at 512–13; *see also Parr*, 489 S.W.3d at 781 (negligence *per se* is based on principle that certain statutes define a standard of care), and the FTCA does not do this for data security. *See* 15 U.S.C. § 45(a); *Negron*, 2025 WL 2710014, at *10 ("[T]he statutory language of the FTCA…can[not] be interpreted to legislate a standard of care for data security" because it "simply prohibits unfair and deceptive trade practices[.]"); *Munger v. Matco Tools Corp.*, No. 5:23-CV-00337, 2026 WL 1223399, at *8 (N.D. Ohio May 5, 2026); *Doe v. Conceptions Reprod. Assocs., Inc.*, No. 25-CV-00009-NYW-CYC, 2026 WL 1145600, at *8 (D. Colo. Apr. 28, 2026). There are no specifics in 15 U.S.C. § 45(a) that say what precautions a data-storage provider must provide. Thus, there is nothing for a factfinder to measure facts against to determine whether a data-storage provider met the required precautions or not. *Goudeaux*, 409 S.W.3d at 513 (for negligence *per se* claim, jury determines if defendant engaged in act in violation of safety statute or failed to engage in acts required by safety statute). Because the FTCA is not the type of statute that can be the basis of a negligence *per se* claim under Missouri law, the Motion to Dismiss Count I, negligence *per se*, is granted.

6

**II.    The Motion to Dismiss Count II is denied.  The Complaint states a claim for breach of implied contract.**

Next, Walsworth moves to dismiss Fish's breach of implied contract claim.  Fish's implied contract claim alleges that when she provided her PII to Walsworth she entered into an implied contract with Walsworth, under which she provided her PII in exchange for adequate data security. (Doc. 19 at ¶ 152).

Walsworth argues that this claim should be dismissed because (1) Plaintiffs fail to plausibly allege a contract exists between the parties, (2) Plaintiffs fail to plausibly allege consideration, and (3) the claim fails for lack of a concrete injury.  *Id*.  Not so.

"A breach of contract action includes the following essential elements: (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." *Bell v. Shelter Gen. Ins. Co.,* 701 S.W.3d 614, 618 (Mo. 2024) (quoting *Keveney v. Mo. Mil. Acad.*, 304 S.W.3d 98, 104 (Mo. banc 2010).

**A. Fish adequately pled the existence of an implied contract for data security.**

Under Missouri law, "[t]he essential elements of any contract...are 'offer, acceptance, and bargained for consideration.'" *Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 774 (Mo. 2014) (internal quotations omitted).  Unlike an express contract, which must be stated orally or in writing, a contract implied in fact arises if assent is manifested by conduct rather than words.  *Howland v. Truman Med. Ctr., Inc.*, 719 S.W.3d 98, 108 n.7 (Mo. App. 2025); *see also Hodge v. St. Louis Union Tr. Co.,* 261 S.W. 67, 70 (Mo. 1924).  "There is no difference in legal effect between an express contract and one implied in fact.  The distinction lies merely in the manner of manifesting mutual assent." *Nickel v. Stephens Coll.*, 480 S.W.3d 390, 398 n.6 (Mo. App. 2015) (quoting *Bailey v. Interstate Airmotive, Inc.,* 219 S.W.2d 333, 338 (Mo. 1949)).  The Eighth Circuit has already determined that, "[u]nder Missouri law, whether conduct manifests consent is determined by what a reasonably prudent person would be led to believe by that conduct, in light of all the circumstances and relations of the parties." *Pietoso, Inc. v. Republic Servs., Inc.*, 4 F.4th 620, 623 (8th Cir. 2021) (cleaned up).  "Conduct that is unambiguous in light of all relevant circumstances suffices to show consent." *Id*. (internal quotation marks omitted).  That is, consent is implied if it is a "necessary deduction from the circumstances, general language or conduct of the parties." *Id*. (citing favorably *Maples v. United Sav. & Loan Ass'n,* 686 S.W.2d 525, 527 (Mo. App. 1985).

7

"But acts that are ambiguous in their character in light of the relevant circumstances are insufficient." *Id*. (internal quotation marks omitted). "Ordinarily, whether conduct manifests consent 'is a question to be resolved by the trier of fact.'" *Id*. (citation omitted).

Here, Fish's factual allegations plausibly allege an implied contract. Fish alleges that Walsworth "made promises and representations to Plaintiffs and Class Members that their PII would be safe and kept confidential, and that the privacy of that information would be maintained." (Doc. 19, ¶ 21). This plausibly alleges that Walsworth used "general language" that could provide the basis for an implied contract. *Id*.

### B. Consideration

Walworth's challenge to the existence of consideration fares no better. Walsworth argues that there was no valid consideration because any agreement was for the purchase of a textbook rather than for data security. (Doc. 29 at 16–17). But this is not the Plaintiffs' allegation—and the Plaintiffs' allegations do include consideration for data security. "[C]onsideration may consist of some right, interest, profit or benefit accruing to [the promisor], or some forbearance, loss or responsibility given, suffered or undertaken by the [promisee]." *Baker*, 450 S.W.3d at 779 (quoting *Perbal v. Dazor Mfg. Corp.,* 436 S.W.2d 677, 697 (Mo. 1968)). Consideration does not require either party to actually benefit from the contract. *Id*. at 781 ("[I]f the promisee sustains any, the least injury or detriment, it will constitute a sufficient consideration to render the agreement valid.") (quoting *Marks v. Bank of Missouri*, 8 Mo. 316, 319 (Mo. 1843). Here, Plaintiffs allege that they transferred their PII to Walsworth to allow Walsworth to receive payment for an online sale of goods, and to allow Plaintiffs to get the benefit of the online sale. (Doc. 19 at ¶ 151). In return, Walsworth promised both to provide the goods and to safeguard their PII. *See* (*Id.* at ¶ 152). There is no reason why the agreement could not have included multiple facets, one of which was data security. At the motion to dismiss stage, this is enough to allege consideration.

### C. A breach of contract claim does not require actual damages.

Walsworth argues that the claim for breach of contract must be dismissed because the complaint fails to properly allege actual damages. (Doc. 29 at 11). Walsworth cites *Kuhns v. Scottrade, Inc.* for the proposition that actual damages are required to recover under a breach of contract theory in Missouri. 868 F.3d 711, 718 (8th Cir. 2017). Though *Kuhn* does hold this, it cites no precedent to support this principle. *Id.* Further, in the Eighth Circuit, the earliest precedent controls absent the Eighth Circuit reversing itself *en banc*. *Mader v. United States*, 654 F.3d 794,

8

800 (8th Cir. 2011).  And *Kuhns* is contradicted by prior Eighth Circuit precedent.  *See Clayton Ctr. Assocs. by Centor Co. v. Schindler Haughton Elevator Corp.,* 731 F.2d 536, 540 (8th Cir. 1984) ("In Missouri, upon proving the existence of a contract and its breach, a party has made a submissible case and may at least recover nominal damages.").  More recent Eighth Circuit cases agree with the earlier precedent.  *See In re Luebbert*, 987 F.3d 771, 779 (8th Cir. 2021) (holding that, in Missouri, "courts have sustained breach of contract actions even in the absence of actual damages, awarding nominal damages instead").

Because Fish has adequately pled the existence of a contract, consideration, and its breach, the Court will not dismiss the claim for a potential failure to plead actual damages.  The Motion to Dismiss Count II, Breach of Contract, is denied.

**III.    The Motion to Dismiss Count III is granted.  The Complaint fails to state a claim for Breach of Bailment.**

Walsworth argues that the breach of bailment claim should be dismissed because (1) a bailment cannot consist of intangible information; (2) Fish fails to allege the existence of a bailment agreement; and (3) there is no breach of bailment because there is no allegation that Walsworth wrongfully retained Fish's personal information.  (Doc. 29 at 17–18).  Walsworth is correct.

In Missouri, a bailment is a "contract resulting from the delivery of goods by a bailor to bailee on condition that they be restored to the bailor, according to bailor's directions, so soon as the purposes for which they were bailed are answered."  *Seitz v. Lemay Bank and Trust Co.*, 959 S.W.2d 458, 461 (Mo. 1998) (cleaned up).  Here, the fact that Fish gave her financial information to Walsworth does not create a bailment because Fish does not plausibly allege that there was a contract between Walsworth and her to "restore[ ]" "goods" (read: information) to Fish.  *See id*. There was no contract to "restore" because at most Plaintiffs allege that they had merely "the understanding that [Walsworth] would return or delete their *payment card information* once the transaction was completed and prevent it from being intercepted while it was in use."  (Doc. 19 ¶ 163).  But this makes no sense.  Credit card information stored on a computer cannot be "returned" (maybe absent turning over the entire computer system, which is not what plaintiffs allege was supposed to happen here) and "deleting" it does not "restore it to the bailor" either because the bailor still had it before the deletion.  This is one of the reasons why payment card

9

*information* cannot be "goods" within the context of a bailment.  The Court dismisses the breach of bailment claim—Count III.

IV.    **The Motion to Dismiss Count IV is granted.  The Complaint does not state a claim for invasion of privacy**

"The tort of invasion of privacy includes four separate causes of action: intrusion on the plaintiff's seclusion or private affairs, public disclosure of embarrassing private facts, publicly placing plaintiff in a false light, and appropriation of plaintiff's name or likeness for defendant's advantage." *Nemani v. St. Louis Univ.*, 33 S.W.3d 184, 185 (Mo. 2000).  Here, Fish brings a claim for two of them: public disclosure of private facts and intrusion upon seclusion. (Doc. 19 at 34–35) (bringing a claim for an unspecified "Invasion of Privacy"); *see also* (Doc. 36 at 11) (clarifying that Plaintiffs are bringing claims for public disclosure of private facts and intrusion upon seclusion).

Walsworth asks this Court to dismiss the tortious intrusion upon seclusion claim on the grounds that Walsworth did not intrude on Fish's privacy—hackers did.  (Doc. 29 at 19–20).  Tortious "intrusion on seclusion" has three elements: (1) an intentional intrusion (2) on the private affairs of another (3) by unreasonable means and highly offensive to a reasonable person.  *Sofka v. Thal*, 662 S.W.2d 502, 510 (Mo. banc 1983) (citing the Restatement (Second) of Torts § 652B).  Walsworth is correct that an intrusion upon seclusion claim cannot survive the motion to dismiss in this case because Walsworth did not commit intrusion—hackers did.  (Doc. 19 ¶¶ 3, 4); *see also Negron*, 2025 WL 2710014, at *13   (dismissing intrusion upon seclusion claim because any intrusion was committed by hackers, not the company entrusted with Plaintiff's PII).

Next, Walsworth asks this Court to dismiss the public disclosure of private facts claim on the ground that Fish has not alleged a public disclosure by Walsworth or publication by Walsworth.  (Doc. 29 at 19–20).  In Missouri, a claim for public disclosure of private facts requires "(1) publication or publicity; (2) absent any waiver or privilege; (3) of private matters in which the public has no legitimate concern; (4) so as to bring shame or humiliation to a person of ordinary sensibilities." *St. Anthony's Medical Center v. H.S.H.*, 974 S.W.2d 606, 609–10 (Mo. App. 1998).  The Court agrees that the facts alleged here do not satisfy the first element of public disclosure of private facts by Walsworth, as Walsworth did not "communicat[e] to the public in general or to a large number of persons" the Plaintiffs' financial information. *Id*.  Rather, there was a cyberattack, and someone stole the financial information.  (Doc. 19 ¶¶ 3, 4); *see also Negron*, 2025 WL

10

2710014 at *13 (holding cyberattack did not amount to public disclosure of private facts).  Thus, the Motion to Dismiss Count IV, Invasion of Privacy, is granted.

**V.      The Motion to Dismiss Count V is granted.  The complaint does not properly plead unjust enrichment.**

As an alternative to her breach of contract claim, Fish brings a claim for unjust enrichment. (Doc. 19 at ¶ 179–90).  Walsworth asks this Court to dismiss the unjust enrichment claim both because Walsworth was not enriched and because Fish has an adequate remedy at law.  (Doc. 29 at 21–22).  "Unjust enrichment requires a showing that: '(1) [the plaintiff] conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted and retained the benefit under inequitable and/or unjust circumstances.'" *Hargis v. JLB Corp.*, 357 S.W.3d 574, 586 (Mo. 2011) (quoting *Howard v. Turnbull,* 316 S.W.3d 431, 436 (Mo. App. 2010)).

The Court understands the "Walsworth was not enriched" argument to be that Plaintiffs did not confer any "benefit" on it.  The only benefit Plaintiffs allege they gave to Walsworth was their personally identifiable information.  (Doc. 19 ¶ 181).  They allege this was ". . .a necessary benefit *required* by Defendant in offering its services, and absent which Defendant would be unable to offer its services." (Doc. 36 at 13).[3]  But Plaintiffs have failed to allege that any specific portion of a payment they made to Walsworth went toward data protection.  In such situations, it is not plausible that defendants like Walsworth retained a benefit in exchange for providing data protection (rather than in exchange for providing the textbooks) or that retaining any benefit they did receive was inequitable.  *See In re SuperValu, Inc.*, 925 F.3d at 966.  Likewise, the Eighth Circuit has held that, under Missouri law, unused information is not a "benefit" for the purpose of an unjust enrichment claim.  *Earley v. Wachovia Bank, N.A.*, 361 F. App'x 699, 700 (8th Cir. 2010).  If the provision of the PII can be separated from the rest of the sale, the claim still fails because the information is not a benefit unless it is used.  This Court therefore dismisses the unjust enrichment claim.

**VI.     The Motion to Dismiss Count VI is granted.  The Complaint does not state a claim under the California Unfair Competition Law.**

Walsworth argues that the California Unfair Competition Law (UCL) claim must be dismissed because the alleged liability-creating conduct took place outside of California.  (Doc.

---

[3] This statement is supported by the facts alleged in the complaint. *See* (Doc. 19 at ¶¶ 1, 75, 89, 105, 151).

11

29 at 16–17).  Pearce (the only California plaintiff and therefore the only plaintiff bringing this claim) disagrees, arguing that the UCL applies because she was a California resident injured in California.  (Doc. 36 at 15–16).  Not so.

Absent instructions to the contrary from the California legislature, California law contains a presumption against extraterritoriality: "if the liability-creating conduct occurs outside of California, California law generally should not govern that conduct."  *Oman v. Delta Air Lines, Inc.*, 889 F.3d 1075, 1079 (9th Cir. 2018); *see also Diamond Multimedia Sys., Inc. v. Superior Ct.,* 80 Cal.Rptr.2d 828, 842–843 (Cal. 1999) (the key inquiry in applying presumption against extraterritoriality is determining where "the conduct which gives rise to liability" occurred); *Thunder Studios, Inc. v. Kazal*, 13 F.4th 736, 743 (9th Cir. 2021) (citation omitted) (holding that the determinative factor in California's presumption against extraterritoriality is the location of the *conduct*).  "Neither the language of the UCL nor its legislative history provides any basis for concluding the Legislature intended the UCL to operate extraterritorially.  Accordingly, the presumption against extraterritoriality applies to the UCL in full force." *Sullivan v. Oracle Corp.*, 127 Cal.Rptr.3d 185, 198 (Cal. 2011).  Considering these holdings, "[w]here a plaintiff fails to allege that the location of the challenged conduct was in California, the UCL does not apply." *Fotobom Media, Inc. v. Google LLC*, 719 F. Supp. 3d 33, 54 (D.D.C. 2024); *see also Toretto v. Donnelley Fin. Sols., Inc.,* 583 F. Supp. 3d 570, 604 (S.D.N.Y. 2022).  Here, Pearce (the California plaintiff), at most, merely alleges that she was injured in California.  *See* (Doc. 29 at 15) (arguing that Pearce's injuries occurred in California because she is a resident and citizen of California); *see also* (Doc. 19 at ¶ 13) (alleging Pearce is a resident and citizen of California).  This is inadequate.  Because there is no allegation that Walsorth's conduct took place in California, the UCL does not apply.  *See e.g Fotobom*, 719  F. Supp. 3d at 54; *Toretto* 583 F. Supp. 3d at 604; *Elzeftawy v. Pernix Grp., Inc.,* 477 F. Supp. 3d 734, 784–85 (N.D. Ill. 2020);  *In re NCB Mgmt. Servs., Inc. Data Breach Litig.,* 748 F. Supp. 3d 262, 283 (E.D. Pa. 2024).

Though some courts have adopted Pearce's position, this Court does not find their reasoning persuasive.  These courts generally rely *Norwest Mortgage, Inc. v. Superior Court,* 85 Cal.Rptr.2d 18, (1999), and *Yu v. Signet Bank,* 82 Cal.Rptr.2d 304 (1999), for the proposition that a California resident can bring a UCL claim for alleged misconduct that occurred out of state.  *See,*

*e.g.*, *Adobe Sys. Inc. v. Blue Source Grp., Inc.,* 125 F. Supp. 3d 945, 972 (N.D. Cal. 2015). Neither *Norwest* nor *Yu* decided this issue, and even if they did, they are not controlling on this Court.

Though *Norwest* does hold that plaintiffs could assert a claim regardless of where the conduct occurred, it offers no rationale for this holding. 72 Cal. App.4th at 224 & n.12;. *Norwest* is also factually distinguishable because the defendant in Norwest had extensive contacts with California, and the facts had a significant California nexus—Norwest's ownership of mortgages on California homes provided a direct connection to California. 85 Cal. Rptr. 2d at 19–20; *Toretto.,* 583 F. Supp. 3d at 605 (coming to the same conclusion regarding *Norwest*); *In re NCB Mgmt. Servs., Inc. Data Breach Litig.,* 748 F. Supp. 3d at 284 (same); *Elzeftawy,* 477 F. Supp. 3d at 785 (same).

Meanwhile, *Yu* applies to defendants who are subject to personal jurisdiction in California. *Yu*, 82 Cal.Rptr.2d at 314. It "does not stand for the proposition that a UCL claim may survive against an out-of-state defendant, based on out-of-state conduct, *solely* because the plaintiff is a California resident[.]" *Elzeftawy,* 477 F. Supp. 3d at 785; *see also Toretto.,* 583 F. Supp. 3d at 605 (coming to the same conclusion); *In re NCB Mgmt. Servs., Inc. Data Breach Litig.,* 748 F. Supp. 3d at 284 (same). Finally, "[e]ven if the Court read *Norwest* and *Yu* that broadly, the Court believes that the Supreme Court of California would decide otherwise." *See Toretto.,* 583 F. Supp. 3d at 605. "Given the clear application of the presumption against extraterritoriality, the Court does not find a compelling reason to conclude that [a plaintiff] can bring a claim under the UCL merely because he is a California resident who allegedly suffered injury in California." *Id*.

The Motion to Dismiss Count V, Violation of the California Unfair Competition Law, is granted.

## VII. The Motion to Dismiss Count VII is denied. The Complaint states a claim under the California Consumer Privacy Act.

Walsworth contends that the claim under the "California Consumer Privacy Act (CCPA) must be dismissed for four independent reasons: (a) it is untimely because the suit was instituted before the CCPA's mandatory 30-day period elapsed, (b) the complaint does not allege that Walsworth failed to implement adequate security measures, and (c) the complaint does not properly allege that Walsworth failed to cure any issues after receiving the notice. (Doc. 29 at 23–24). This Court addresses each of these arguments in turn.

With respect to the first reason, the Court declines to dismiss the complaint on the grounds that the suit was instituted before the CCPA's mandatory 30-day period elapsed. Though the CCPA requires that "a consumer provide[] a business 30 days' written notice identifying the specific provisions of this title that the consumer alleges have been or are being violated," this requirement applies only when the individual is bringing suit "against a business for statutory damages." Cal. Civ. Code § 1798.150(b). Here, the complaint does not request statutory damages but rather outlines an intent to amend and add them later. (Doc. 19 at ¶ 213).[4] Thus, the timeliness of notice is not currently before the Court.

The second reason—Walsworth's challenge to the sufficiency of Pearce's pleadings regarding the violation of the CCPA—also fails. It is true that a party claiming a CCPA violation must allege that the defendant "violat[ed] … the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information." Cal. Civ. Code § 1798.150(a). But Pearce alleged this. She alleged that her payment information was stolen because of Walsworth's' failure to implement reasonable security measures. (Doc. 19 ¶¶ 1, 10, 50, 52–57). At the motion to dismiss stage, Pearce has met the requirements to plead a CCPA claim that does not include statutory damages.

The third reason—Walsworth's argument that the complaint does not properly allege that Walsworth failed to cure any issues after receiving the notice—also fails. The cure provision bars a plaintiff from seeking statutory damages if the business cures an issue within 30 days. Cal. Civ. Code § 1798.150(b). As noted above, Fish is not currently seeking statutory damages.

The Motion to Dismiss is denied as to Count VI, Violation of the California Consumer Privacy Act.

### VIII.   The Motion to Dismiss Count VII is granted. The Complaint fails to state a claim under the California Consumer Records Act.

Walsworth contends that the claim for violation of the California Consumer Records Act (CCRA) must be denied because Pearce failed to allege any incremental harm occurred as a result of the alleged delay in disclosure of a data security breach. (Doc. 29 at 24–25). Pearce responds that the delay prevented her from taking actions to mitigate the harm and thus was at least partially responsible for the damages she alleges in her complaint. (Doc. 36 at 17–18). The CCRA provides

---

[4] It appears that Fish's reply may also be seeking leave to amend the complaint. (Doc. 36 at 17). Any such request is denied for failure to follow the local rules. *See* Local Rule 4.07.

that "[a]n individual or business that conducts business in California, and that owns or licenses computerized data that includes personal information, shall disclose a breach of the security of the system following discovery or notification of the breach…. [T]he disclosure…shall be made within 30 calendar days of discovery or notification of the data breach." Cal. Civ. Code § 1798.82(a)(1)–(2). "Any customer injured by a violation of this title may institute a civil action to recover damages." *Id*. § 1798.84(b). The statute's text demonstrates that "[a] plaintiff must allege actual damages flowing from the unreasonable delay (and not just the intrusion itself) in order to recover actual damages." *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.,* 996 F. Supp. 2d 942, 1010 (S.D. Cal. 2014).

Here, Pearce alleges the following constituted damages: (1) loss of time (Doc. 19 ¶ 58) (2) the ongoing risk posed by the loss of her PII (*Id.*) and (3) that her "information was used to open bank accounts, apply for credit cards, and enroll in subscription services." *Id.* ¶ 98.

"This court is bound by decisions of the highest state court when interpreting state law." *Progressive N. Ins. Co. v. McDonough*, 608 F.3d 388, 390 (8th Cir. 2010) (citing *Minn. Supply Co. v. Raymond Corp.,* 472 F.3d 524, 534 (8th Cir. 2006)). When, as here, "there is no state supreme court case directly on point, our role is to predict how the state supreme court would rule if faced with the issue[ ] before us." *Germain Real Est. Co., LLC v. HCH Toyota*, *LLC,* 778 F.3d 692, 696 (8th Cir. 2015) (quoting *Northland Cas. Co. v. Meeks*, 540 F.3d 869, 875 (8th Cir.2008)); *Dieffenbach v. Barnes & Noble, Inc.,* 887 F.3d 826, 829 (7th Cir. 2018) ("The [CCRA] does not define injury, nor does any state decision we could find.") (citing Cal. Civ. Code § 1798.84).[5]

The Court will address each injury claim individually. First, it addresses loss of time. In this case, loss of time cannot establish incremental harm because Pearce does not allege facts that would allow the Court to plausibly infer that her mitigation efforts would have been different or less time consuming if implemented earlier. *See* (Doc. 19 at ¶¶ 220-222) (the delay in

---

[5] Since *Dieffenbach* was published in 2018, an intermediate appellate court in California found that a plaintiff adequately alleged harm under the CCRA by pleading that delayed notification allowed cyber thieves to trade his personal information on the black market, allowed others to view his personal information, and caused him to receive unwanted phone calls traceable to the data breach. *J.M. v. Illuminate Educ., Inc.,* 323 Cal. Rptr. 3d 605, 613 (2024), *rev'd on other grounds*, 19 Cal. 5th 705, 588 P.3d 611 (2026). The case did not define injury or explain why the alleged harms satisfied the standard. *See id.*

implementing the mitigation efforts rather than the mitigation efforts themselves caused incremental harm).

Second, incrementally increased future risk cannot form the basis for Pearce to recover damages because all future risk (greater or lesser) is inadequate to establish standing to recover damages. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 437 (2021) (risk of future harm cannot, in itself, establish standing to recover damages). To the extent Pearce's claim relies on recovering damages to compensate for future risk, the complaint must be dismissed for lack of subject matter jurisdiction because the Court does not have subject matter jurisdiction over claims asserted by a party without standing to assert the claim. *See Adarand Constructors, Inc. v. Mineta,* 534 U.S. 103, 110 (2001) (standing is a question of subject matter jurisdiction which courts are required to analyze *sua sponte*).

Third, the Court addresses whether injury arising from third parties opening bank accounts, applying for credit cards, and enrolling in subscription services, without the express allegation that Pearce lost money from the same, is insufficient to allege a loss. It is not. *See In re SuperValu, Inc.*, 925 F.3d at 964–65; *see also* Dugas v. Starwood Hotels & Resorts Worldwide, Inc., No. 3:16-CV-00014-GPC-BLM, 2016 WL 6523428, at *4 (S.D. Cal. Nov. 3, 2016) (allegations of unauthorized purchases are inadequate to establish standing because they do not establish that plaintiff suffered a unreimbursed loss). Simply having someone open a bank account in one's name does not indicate a loss to that person. Neither does simply applying for a credit card. As for subscription services, this could cost money, but assuming that it cost money without further facts is unreasonable because "federal law and card-issuer contracts ordinarily absolve the consumer from any obligation to pay the fraudulent charge." *In re SuperValu, Inc.,* 925 F.3d at 965. Because Pearce has failed to plead that she suffered incremental damage, she lacks a basis to bring a private action under the CCRA. The Court dismisses Count VIII (violation of the California Consumer Records Act).

### CONCLUSION

For the aforementioned reasons, Walsworth's Motion to Dismiss, Doc. 28, is **GRANTED** in part and **DENIED** in part. The Motion to Dismiss, Doc. 28, is **GRANTED** with respect to Count I (Negligence), Count III (Breach of Bailment), Count IV (Invasion of Privacy), Count V (Unjust Enrichment), Count VI (Violation of California's Unfair Competition Law), and Count VIII (Violation of the California Consumer Records Act). The Motion to Dismiss, Doc. 28, is **DENIED**

16

as to Count II (Breach of Contract) and Count VII (Violation of the California Consumer Privacy Act).

Dated this 24th day of July, 2026.

_____
MARIA A. LANAHAN
UNITED STATES DISTRICT JUDGE